# EXHIBIT A

Court Cases Online

Page 1 of 1

D.C. Courts Home

# Court Cases Online

Case Search for: 2016 CA 4029

**Click here to view search criteria**

Search retrieved 1 case in less than a second.

Selected 1 cases to view

**Click here to view search results**

Viewing single case; Details retrieved in less than a second.

**Click here to view case summary**

| 2016 CA 004029 B: CRUZ-ROLDEN, CLAUDIA PATRICIA Vs. NAGURKA, GREG | |
|---|---|
| Case Type: Civil II | File Date: 06/02/2016 |
| Status: Open | Status Date: 06/02/2016 |
| Disposition: Undisposed | Disposition Date: |

| Party Name | Party Alias(es) | Party Type | Attorney(s) |
|---|---|---|---|
| CRUZ-ROLDEN, CLAUDIA PATRICIA | | Plaintiff | ALLEN, Mr GEOFFREY D |
| NAGURKA, GREG | | Defendant | |

| Schedule Date | Schedule Time | Description |
|---|---|---|
| 09/02/2016 | 09:30 AM | Initial Scheduling Conference-60 |

| Docket Date | Description | Messages |
|---|---|---|
| 06/02/2016 | Service Issued | Issue Date: 06/02/2016<br>Service: Summons Issued<br>Method: Service Issued<br>Cost Per: $<br><br>NAGURKA, GREG<br>300 Indiana Avenue, NW<br>WASHINGTON, DC 20001<br>Tracking No: 5000174773 |
| 06/02/2016 | Event Scheduled | Event Scheduled<br>Event: Initial Scheduling Conference-60<br>Date: 09/02/2016 Time: 9:30 am<br>Judge: BECK, RONNA L Location: Courtroom 219 |
| 06/02/2016 | Complaint for Negligence Filed | Complaint for Negligence Filed Receipt: 340401 Date: 06/02/2016 |

| Receipt # | Date | From | Payments | | Fee | | Amount Paid |
|---|---|---|---|---|---|---|---|
| 340401 | 06/02/2016 | ALLEN, Mr GEOFFREY D | Efile | $120.00 | Cost | $120.00 | $120.00 |

https://www.dccourts.gov/cco/maincase.jsf

6/15/2016

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Claudia Patricia Cruz-Roldan )
1507 Pritchard Terrace )
North Chesterfield, VA 23235 )
)
    *Plaintiff,* )
)
Vs. )
)     2016 CA 004029 B
Greg Nagurka )
Law Enforcement Officer at )
Youth and Family Services Division )
DC Metropolitan Police Department )
300 Indiana Avenue, NW )
Washington, DC 20001 )
)
SERVE: )
Court Liaison Division )
Mpd.subpoenas@dc.gov )
)
*Defendant.* )

COMPLAINT

(Negligence, Battery, False Arrest, Intentional Infliction of Emotional Distress, Malicious Prosecution and Civil Rights Violations)

I. Jurisdiction

1.     This action is brought pursuant to 42 USC §1983, 1988, the Fourth and Fifth Amendments to the United States Constitution and the common law of the District of Columbia. Jurisdiction is founded upon the aforementioned Constitution and Statutory provisions and D.C. Code §11-921.

2.     Plaintiff is a resident of the Commonwealth of Virginia. At the time of the incidents in this case, she was a resident of the State of Maryland.

1

3. Defendant Nagurka at all material time hereto was a Detective with the District of Columbia Metropolitan Police Department.

4. In May 2015, Plaintiff was employed at a child care center known as Kiddie Academy D.C. – West, located at 1227 25th Street, NW, Suite 101, Washington, DC 20037. On May 18, 2015 an infant, JS was brought to the Kiddie Academy. He was returned to his mother at around 4.30 p.m. in apparently normal condition. Plaintiff was one of several persons who provided care to him during the course of the day. At one point during the day JS began to cry. Video footage shows Plaintiff rocking JS and "burping" him by patting him on the back with an open palm and holding him close to her body. After a while, JS stops crying. JS was found later in May 18, 2015 found to have bruising on several parts of his body, including his arms, legs, and back. He was examined on May 19, 2015 and the police were notified. Defendant Nagurka began to conduct an investigation. Upon information and belief, Defendant Nagurka was the lead detective in this case throughout its pendency. As part of his inquiry he sent the portion of the video showing Plaintiff burping JS to Dr. Allison Jackson, the Division Chief for the Freddie Mac Foundation Child & Adolescent Protection Center. On June 1, 2015, Dr. Jackson sent Defendant Nagurka an E-Mail is which she stated that , "while she is patting him quite vigorously, I don't think this clip shows enough to explain his injuries." On June 2, 2015 Nagurka texted Plaintiff and her co-worker Mayra Lopez asking them to report to the 2nd District Police station to give a statement. On June 3, 2015, Plaintiff and Ms. Lopez arrived at the Police station at around 6.00 p.m. after they had finished work. Ms. Lopez was interviewed first and was asked if she had observed Plaintiff abusing JS or any other children. She denied witnessing any such abuse by anyone, including Plaintiff. Nagurka then made the following statement:

> AT this point she's (ie Plaintiff) already in trouble. So there's nothing you're gonna do. The only thing you're doing to do is get yourself in trouble by not telling us something. You wanna be with her? You could join her. But if you don't want to be with her, you gotta tell us the truth. This is not about ratting on a friend. This is about YOU. You wanna save your butt. You wanna have a job? You wanna go home at night and be with your family? All that stuff…you have to be honest with us right now.

At that point, the transcript indicates that Ms. Lopez was crying. She then claimed she had seen Plaintiff pinching children on multiple occasions. Nagurka then states:

> GN: These are felonies. This is a felony. This is not a simple crime. People go to jail for this stuff, and I'm not trying to scare you, I'm just telling you the truth. I've been honest with you guys, for the most part, but the reason I've nto been fully honest because both of you have not been fully honest with me. I'm not stupid. This aint my first investigation. So what I'm going to do right now, because you're being honest with us now, is that you're going to stay here with Jenny in this room. And I can't make any promises, but it looks like you might be able to leave today. But you're going to have to stay in this room with me. And I'm only doing that for your protection.

Thereafter, Ms. Lopez claims she saw about eight incidents involving pinching over a four month period.

Defendant Nagurka then interviewed Plaintiff who denied any wrongdoing but claimed that if she had hurt any children it had been unintentional. At one point, Plaintiff attempted to leave and was told that she could not. This occurred prior to her formal arrest. Defendant Nagurka finally arrested Plaintiff and informed her that she would be charged with First Degree Cruelty to Children. She was detained overnight.

On July 21, 2015, Plaintiff was charged with abusing another child in by causing a mark on the child's right cheek on April 23, 2015. Nagurka claimed this was supported by a video showing Plaintiff showing her pinching the child. In fact, the video shows her removing something from the child's <u>left</u> cheek. There was no assertion that there was any mark or injury

3

to the left cheek. Upon information and belief there was no other evidence to suggest that the injury to the right cheek was caused by Plaintiff. There was also an allegation that Plaintiff caused an injury to the same child on April 1, 2015. However, video on that date shows another infant raking her hand against the child's cheek while Plaintiff was talking to a parent.

Ms. Cruz Roldan was charged by information with one count of Attempted Second Degree Cruelty to Children and one count of Simple Assault for each of the above-referenced cases. Ms. Cruz Roldan's trials were set for May 9, 2016 (2015-CMD-7619) and May 11, 2016 (2015-CMD-9806). Ms. Cruz Roldan's trials in these matters were originally scheduled for November 2 and 3, 2015, but those trials were continued in part due to the government's late-breaking disclosure of discovery, including over 30 hours of video footage, approximately a week and a half before the trial dates. The parties set the next trial dates for March 21 and March 22, 2016, but due to government witness availability, on February 17, 2016, the parties set new trial dates of May 9, 2016 (2015-CMD-7619) and May 11, 2016 (2015-CMD-9806).

Plaintiff's criminal defense attorney made repeated requests for *Brady* material. In late August 2015, defense counsel filed a letter in each of these cases making demands under *Brady v. Maryland*, 373 U.S. 83 (1963), requesting all materially exculpatory material. On April 7, 2016, defense counsel sent a second so called *Rosser* letter in 2015-CMD-9806, again requesting any information covered under *Brady*. On the same date, defense counsel also filed a separate *Brady* letter in both cases specifically requesting exculpatory information related to Ms. Mayra Lopez, the government's star witness, and information linking any other individual to the charged offenses. In the email attaching the courtesy copy of the *Brady* letter, the

4

defense specifically informed the government that counsel "believe[d] there [was] significant *Brady* material outstanding with respect to Ms. Mayra Lopez."

On April 13, 2016, less than a month before trial, the government disclosed for the first time two recorded interviews of Ms. Mayra Lopez. These interviews each contained significant *Brady* material, including multiple inconsistent statements made by Ms. Lopez and evidence of Ms. Lopez's bias and motive to fabricate. In addition, it showed the aforementioned threats that Defendant Nagurka made to the witness.

On April 23, 2016, the government made additional *Brady* disclosures. Specifically, the government disclosed an email chain dated June 1, 2015, *before Ms. Cruz Roldan was even arrested*, between Detective Greg Nagurka and Dr. Allison Jackson, the physician who had examined J.S. During his investigation, Detective Nagurka reviewed surveillance footage of the entire day that J.S. had been at Kiddie Academy. Detective Nagurka isolated only one portion of that entire footage: a clip of approximately 90 seconds during which Ms. Cruz Roldan is rocking J.S. in a chair. In the clip, J.S. is crying and Ms. Cruz Roldan is burping J.S. by patting his back. The email chain indicates that Detective Nagurka sent this clip to Dr. Jackson for her thoughts. As noted above, Dr. Jackson told Detective Nagurka the following: "While [Ms. Cruz Roldan] is patting him quite vigorously, *I don't think this clip shows enough to explain his injuries*" (emphasis added). Upon information and belief this information was concealed by Officer Nagurka until shortly before its disclosure to the defense.

On April 28, 2016, the defense filed yet another *Brady* letter related to these disclosures. The defense requested "all information about any statements Dr. Jackson has made to any member of the prosecution team about video footage being 1) inconsistent with, 2) not fully explaining, or 3) not showing sufficient force to cause J.S.'s injuries" and for the government to

5

"[d]isclose when Inv. Nagurka disclosed Dr. Jackson's statement to the U.S. Attorney's Office and to which prosecutor(s)." The government did not respond to this *Brady* request.

The government has also failed to respond to the defense's request for information from the parents of the other children who, according to Ms. Lopez, were supposedly abused by Ms. Cruz Roldan. On October 20, 2015, the government filed a motion attempting to introduce Ms. Lopez's allegations that Ms. Cruz Roldan allegedly assaulted four other children in her care: N., G., O., and an unidentified child. At the same time, the government provided copies of statements taken by Ms. Cruz Roldan's defense investigator from the parents of N. and G. stating that they never saw signs of abuse on their children nor did they have any prior problems with Ms. Cruz Roldan. The government did not not provide information about what the parents of these children told *law enforcement*, even though the defense state it had reason to believe that law enforcement spoke to these parents as early as the summer of 2015.

On, May 4, 2016, the government provided additional *Brady* disclosures about Ms. Lopez that the Police had in its possession for almost a year. The government provided CFSA records indicating that on June 1, 2015, Detective Greg Nagurka and a CFSA(Child and Family Services Agency) worker went to Kiddie Academy and again interviewed Ms. Lopez. The records memorialize that during this conversation, once again, Ms. Lopez did not say anything incriminatory against Ms. Cruz Roldan. Indeed, Ms. Lopez stated *affirmatively* during this interview that she had never seen or heard of anyone doing anything to any of the children in the Center. This disclosure of yet another prior inconsistent statement made by Ms. Lopez came after the defense specifically requested information about this interview with Ms. Lopez

6

in its April 7, 2016 *Brady* letter. In the government's response, filed with the court on April 19, 2016, the government stated merely that "[t]o the best of [Det. Nagurka's] recollection and based on his files, Det. Nagurka does not believe he took any notes from this conversation with Ms. Lopez." The government did not provide any further information about the substance of this June 1, 2015 conversation with Ms. Lopez until disclosing the CFSA records on May 4, 2016. The CFSA records, also do not contain any indication that Det. Nagurka disclosed information from the June 1, 2015 interview in which Ms. Lopez affirmatively indicated that she had never seen or heard of anyone doing anything inappropriate with the children at Kiddie Academy.

The CFSA records also contain further *Brady* information. The social worker and Det. Nagurka also interviewed Mary Washington, a Kiddie Academy employee who was with J.S. for about two hours that day, from approximately 12:30-2:45 p.m. The government had previously provided notes from Det. Nagurka about this interview with Ms. Washington, but the notes merely contained the following: "Held [J.S.] while he went to sleep/worked with Myra and Patricia 4 month/no reports of inappropriate activities." According to the memorialization of this conversation in the CFSA records, Ms. Washington further reported that 1) she did not any marks or bruises on J.S. while he was in her care, 2) she had "not heard or seen anyone hurt any of the children since working with Patricia and Mayna" [sic]; and 3) she had "no concerns about how they treated children at the Center."

Based on the repeated pattern of failing to produce evidence which was clearly exculpatory, Plaintiff's criminal defense attorney filed a Motion to Dismiss the charges against her on May 4, 2016. The government responded by entering a *Nolle Prosequi* to both charges on May 6, 2016.

7

During the pendency of the criminal cases, Milena Mattingly, the owner of the Kiddie Academy of DC - West End, made a number of statements to the media concerning these incidents. For example, on July 24, 2015 she is reported as having told Fox News that "I'm terrified about somebody that we trusted can do anything to the children – somebody we checked reference, background checks came out clear – that will inflict any kind of pain on a child." She also gave a press conference on or about July 23, 2015 in which she stated "once we found she was guilty by the investigators, we had to terminate her." Plaintiff's name was added to a Registry making it impossible for her to get other work in the child care field. She has suffered extreme anxiety and distress as a result of the criminal cases. She has experienced recurrent nightmares.

## COUNT ONE

### (Negligence – Defendant Nagurka)

5. Plaintiff hereby incorporates paragraphs 1 through 4, *supra*, by reference.

6. The aforesaid events occurred without reasonable investigation or probable cause. They show a failure to take reasonable care with respect to plaintiff, to whom the defendant owed a duty of care.

7. Defendant's conduct in this case, violated accepted national standards of care with respect to interviewing witnesses and conveying exculpatory evidence to prosecutors in a timely fashion.

8. As a proximate cause of the aforesaid negligence plaintiff sustained great pain and suffering, emotional distress, humiliation and physical injury and loss of income.

**WHEREFORE**, plaintiff prays for judgment against Defendant Nagurka for damages in the amount of $5,000,000.00 and an award of court costs and any other relief deemed

8

appropriate by the court.

## COUNT TWO

### (Battery – Defendant Nagurka)

9. Plaintiff hereby incorporates paragraphs 1 through 8, *supra*, by reference.

10. By arresting Plaintiff, Defendant Nagurka subjected her to an unwanted and offensive touching of her person.

11. Defendant's actions were objectively unreasonable and intentional.

12. As a proximate cause thereof, Plaintiff sustained great pain and suffering, emotional distress, humiliation, physical distress and loss of income.

**WHEREFORE**, Plaintiff prays for judgment against Defendant Nagurka and asks for an award of damages in the amount of $5,000,000.00, court costs and any other relief deemed appropriate by the court.

## COUNT THREE

### (Intentional Infliction of Emotional Distress – Defendant Nagurka)

13. Plaintiff hereby incorporates paragraphs 1 through 12, *supra*, by reference.

14. As a direct and proximate result of the above-described intentional acts of the Defendant Nagurka, including threatening a witness and concealing exculpatory evidence, Plaintiff suffered severe mental anguish and emotional distress, including severe anxiety and recurrent nightmares Such conduct was deliberate, and motivated by evil motives, actual malice and intent to humiliate the plaintiff and was outrageous, extreme and completely unjustified.

15. Defendant Nagurka's actions proximately caused plaintiffs, extreme emotional distress, anxiety, depression and loss of income.

**WHEREFORE**, Plaintiff prays for judgment Defendant Nagurka and asks for damages in the amount of $5,000,0000.00, court costs and any other relief deemed appropriate by the court.

## COURT FOUR

### (False Arrest – Defendant Nagurka)

16. Plaintiff hereby incorporates paragraphs 1 through 15, *supra*, by reference.

17. Defendant Nagurka knowingly and intentionally falsely arrested and detained Plaintiff, as described above. Such conduct was deliberate, grossly fraudulent and motivated by evil motive, actual malice and intent to injure and humiliate the plaintiff.

18. These acts caused Plaintiff's detention as described above.

**WHEREFORE**, Plaintiff prays for judgment against Defendant Nagurka for an award of damages in the amount of $5,000,000.00, court costs and any other relief deemed appropriate by the court.

## COUNT FIVE

### (Malicious Prosecution – Defendant Nagurka)

19. Plaintiff hereby incorporates paragraphs 1 through 18, *supra*, by reference.

20. Criminal prosecutions were undertaken against Plaintiff as described above. During the course of which, Defendant Nagurka threatened witnesses in order to secure their assistance and withheld and concealed material exculpatory evidence as described above.

21. Once the exculpatory evidence was produced, all charges against Plaintiff were dismissed by the United States.

22. There was no probable cause for the criminal proceedings which were based on false information.

23. Officers Nagurka acted with malice when lying to and threatening a witness, failing to provide witness statements indicating Plaintiff's innocence and concealing other exculpatory evidence including a Doctor's report which indicated that the actions of Plaintiff did not explain the injuries to JS.

24. The aforesaid malicious acts of Defendant Nagurka were the proximate cause of Plaintiff's arrest, detention and prosecution and caused great hardship, inconvenience, humiliation, anxiety and loss of income to plaintiff.

**WHEREFORE**, plaintiff prays for judgment against Defendant Nagurka for an awards of damages in the amount of $5,000,000.00, an award of court costs and any other relief deemed appropriate by the court.

## COUNT SIX

### (Civil Rights Violation – Defendant Nagurka)

25. Plaintiff hereby incorporates paragraphs 1 through 24, *supra*, by reference.

26. Said acts by Defendant Nagurka, led to the arrest of Plaintiff without probable cause and the continued prosecution of Plaintiff for almost a year.

27. At the time, Defendant Nagurka was acting under color of law.

28. The actions alleged above deprived Plaintiffs of his the following rights under the United States Constitution:

    a. Freedom from arrest without probable cause;

    b. Plaintiff's right to the due process of law.

29. Defendant subjected Plaintiff to such deprivations with either malice or reckless disregard of Plaintiff's rights.

11

30. In so acting, Defendant Nagurka failed to act as an objectively reasonable officer would have acted in similar circumstances and violated Plaintiff's clearly established rights.

31. As a proximate cause of these Constitutional violations, Plaintiff sustained great pain and suffering, emotional distress, humiliation, physical injury and loss of income.

**WHEREFORE**, Plaintiff prays for judgment against Defendant Nagurka for damages in the amount of $5,000,000.00 and an award of court costs, attorney's fees, and any other relief deemed appropriate by the court.

Respectfully Submitted by,

*/s/ Geoffrey D. Allen*

GEOFFREY D. ALLEN, ESQ.
DC Bar No.: 288142
1730 Rhode Island Avenue, NW, Suite 206
Washington, DC 20036
Phone: (202) 778-1167
Fax: (202) 659-9536
Email: geoffreyallen@verizon.net

## JURY DEMAND

Plaintiff demands trial by jury as to all counts.

*/s/ Geoffrey D. Allen*
Geoffrey D. Allen

12

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

CLAUDIA PATRICIA CRUZ-ROLDAN
_____
Plaintiff

vs.                                      Case Number  __2016 CA 004029 B__

GREG NAGURKA
_____
Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

GEOFFREY D. ALLEN
Name of Plaintiff's Attorney

1730 Rhode Island Avenue NW, STE 200
Address
Washington, DC 20036

(202) 728-1167
Telephone

_Clerk of the Court_

By _____
Deputy Clerk

Date __06/02/2016__

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Dê có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-682-2700) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

FORM SUMMONS - Jan. 2011                                                                                    CASUM.doc

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

CLAUDIA PATRICIA CRUZ-ROLDAN  Case Number: 2016 CA 004029 B

vs  Date: _____

GREG NAGURKA  ☐ One of the defendants is being sued in their official capacity.

| Name: (Please Print) GEOFFREY D. ALLEN | Relationship to Lawsuit |
|---|---|
| Firm Name: LAW OFFICE OF GEOFFREY ALLEN | ☑ Attorney for Plaintiff |
| Telephone No.: 202-378-1147   Six digit Unified Bar No.: 288142 | ☐ Self (Pro Se)  ☐ Other: |

TYPE OF CASE: ☐ Non-Jury  ☐ 6 Person Jury  ☑ 12 Person Jury
Demand: $30,000,000.00  Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED
Case No.: _____  Judge: _____  Calendar #: _____

Case No.: _____  Judge: _____  Calendar#: _____

NATURE OF SUIT:  (Check One Box Only)

**A. CONTRACTS**                                           **COLLECTION CASES**

☐ 01 Breach of Contract        ☐ 07 Personal Property          ☐ 14 Under $25,000 Pltf. Grants Consent
☐ 02 Breach of Warranty        ☐ 09 Real Property-Real Estate  ☐ 16 Under $25,000 Consent Denied
☐ 06 Negotiable Instrument     ☐ 12 Specific Performance       ☐ 17 OVER $25,000 Pltf. Grants Consent
☐ 15 Special Education Fees    ☐ 13 Employment Discrimination  ☐ 18 OVER $25,000 Consent Denied
☐ 10 Mortgage Foreclosure/Judicial Sale

**B. PROPERTY TORTS**

☐ 01 Automobile        ☐ 03 Destruction of Private Property   ☐ 05 Trespass
☐ 02 Conversion        ☐ 04 Property Damage                   ☐ 06 Traffic Adjudication
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

**C. PERSONAL TORTS**

☐ 01 Abuse of Process              ☐ 09 Harassment                ☐ 17 Personal Injury- (Not Automobile,
☐ 02 Alienation of Affection       ☐ 10 Invasion of Privacy            Not Malpractice)
☐ 03 Assault and Battery           ☐ 11 Libel and Slander         ☐ 18 Wrongful Death (Not Malpractice)
☐ 04 Automobile- Personal Injury   ☐ 12 Malicious Interference    ☐ 19 Wrongful Eviction
☐ 05 Deceit (Misrepresentation)    ☐ 13 Malicious Prosecution     ☐ 20 Friendly Suit
☐ 06 False Accusation              ☐ 14 Malpractice Legal         ☐ 21 Asbestos
☐ 07 False Arrest                  ☐ 15 Malpractice Medical (Including Wrongful Death)  ☐ 22 Toxic/Mass Torts
☐ 08 Fraud                         ☑ 16 Negligence- (Not Automobile,  ☐ 23 Tobacco
                                        Not Malpractice)          ☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE ☐ IF USED

CV-496/Oct 14

# Information Sheet, Continued

**C. OTHERS**

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 04 Condemnation (Emin. Domain)
- ☐ 05 Ejectment
- ☐ 07 Insurance/Subrogation Under $25,000 Pltf. Grants Consent
- ☐ 08 Quiet Title
- ☐ 09 Special Writ/Warrants (DC Code § 11-941)
- ☐ 10 T.R.O./ Injunction
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment
- ☐ 17 Merit Personnel Act (OEA) (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability
- ☐ 24 Application to Confirm, Modify, Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 25 Liens: Tax/Water Consent Granted
- ☐ 26 Insurance/ Subrogation Under $25,000 Consent Denied
- ☐ 27 Insurance/ Subrogation Over $25,000 Pltf. Grants Consent
- ☐ 28 Motion to Confirm Arbitration Award (Collection Cases Only)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 30 Liens: Tax/ Water Consent Denied
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower
- ☐ 34 Insurance/Subrogation Over $25,000 Consent Denied

**II.**

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage Certificate
- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as Judgment [ D.C. Code § 2-1802.03 (h) or 32-1519 (a)]
- ☐ 20 Master Meter (D.C. Code § 42-3301, et seq.)
- ☐ 21 Petition for Subpoena [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a) (1) (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

_____  
Attorney's Signature

6/2/16  
Date

CV-496/Oct 14



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

CLAUDIA PATRICIA CRUZ-ROLDEN
   Vs.                                                  C.A. No.      2016 CA 004029 B
GREG NAGURKA

## INITIAL ORDER AND ADDENDUM

    Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

    (1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

    (2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

    (3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

    (4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

    (5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

    (6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

                                                                  Chief Judge Lee F. Satterfield

Case Assigned to: Judge RONNA L BECK
Date:  June 2, 2016
Initial Conference: 9:30 am, Friday, September 02, 2016
Location:  Courtroom 219
           500 Indiana Avenue N.W.

                                                                                                             Caio.doc

# ADDENDUM TO INITIAL ORDER AFFECTING
# ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc