UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CLAUDIA PATRICIA CRUZ-ROLDAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GREG NAGURKA, )<br>)<br>Defendant. )<br>) | Case No. 16-cv-1308 (RJL) |

**FILED**
**MAR 31 2017**
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM OPINION
(March 30, 2017) [Dkts. #9, #12]

Plaintiff, Claudia Patricia Cruz-Roldan ("plaintiff" or "Cruz-Roldan"), a childcare provider at a local day care facility, was the subject of a criminal investigation into child abuse. The U.S. Attorney's Office for the District of Columbia ("the Government") charged her in Superior Court with second degree cruelty to children and simple assault, but ended up voluntarily dismissing the cases. Cruz-Roldan maintains her innocence and claims the investigation and criminal cases went too far. She brings this action against Greg Nagurka ("defendant" or "Nagurka"), who was the lead detective on the case for the D.C. Metropolitan Police Department. She alleges several tort claims, brought under D.C. law (Counts I-V and VII), as well as several constitutional violations, brought under § 1983 (Count VI). Am. Compl. [Dkt. #5]. Nagurka moves for partial dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Def.'s Mot. for Partial Dismissal of the Am. Compl. ("Def's Mot.") 1 [Dkt. #9].

Specifically, Nagurka moves to dismiss Cruz-Roldan's tort and § 1983 claims that rely on the prosecution (Count V and part of Count VI), her tort and § 1983 claims based on false arrest (Count IV and the other part of Count VI), and her slander claim (Count VII). Nagurka argues that the Complaint fails to allege the required elements for an injury sustained as part of a criminal prosecution or for a *prima facie* case of slander. He next argues that Cruz-Roldan has not alleged sufficient facts to sustain her false arrest claims. For the reasons described herein, Nagurka's motion for partial dismissal is **GRANTED** with respect to the claims that rely on the prosecution (Count V and part of Count VI). The motion is **DENIED**, however, with respect to the slander claim (Count VII) and the false arrest claims (Count IV and the remaining part of Count VI).

## BACKGROUND

This case arises out of Nagurka's investigation into an incident of alleged child abuse involving J.S., a young boy enrolled at Kiddie Academy, the D.C. daycare center where plaintiff Cruz-Roldan worked. Am. Compl. ¶ 4. On May 18, 2015, bruises were discovered on J.S.'s legs, arm, and back. *Id.* In conducting the investigation, Nagurka obtained Kiddie Academy video footage from that day showing Cruz-Roldan patting a crying J.S. on the back until he stopped crying. *Id.* Nagurka sent a two minute clip of that video to a specialist at the Freddie Mac Foundation Child & Adolescent Protection Center, who responded that "while [plaintiff] is patting [J.S.] quite vigorously, I don't think this clip shows enough to explain [J.S.'s] injuries." *Id.*

Next, Nagurka called Cruz-Roldan and her co-worker, Mayra Lopez, into the police station to give a statement. *Id.* He interviewed Lopez first. *Id.* Initially, Lopez denied

witnessing any abuse at Kiddie Academy. *Id.* Nagurka then informed Lopez that if she did not tell the police what she knew, she could get herself in trouble, possibly lose her job, and possibly go to jail where she would not be able to see her family. *Id.* Lopez, who was crying by this time, then changed her story. She said that Cruz-Roldan had "pinched" children on eight occasions over a four month period. *Id.* Nagurka then interviewed Cruz-Roldan who denied any allegations of intentional abuse, saying "if she hurt any children it had been unintentional." *Id.* Nevertheless, Nagurka arrested Cruz-Roldan and told her she would be charged with first degree cruelty to children. *Id.* On June 4, 2015, the Government ultimately filed a one-count information charging Cruz-Roldan with attempted second degree cruelty to children in D.C. Superior Court (2016-CMD-7619). *See* Def.'s Mot., Ex. 1, at 5-8 [Dkt. #9-1].[1]

Nagurka's further investigation gave rise to an additional charge against Cruz-Roldan. Relying on a video from April 2015, Nagurka claimed that she had pinched another child's right cheek. Am. Compl. ¶ 4. However, the video allegedly shows Cruz-Roldan incidentally touching the child's *left* cheek. *Id.* On July 21, 2015, the Government filed an information against Cruz-Roldan in this second case, charging second degree cruelty to children (2015-CMD-9806). *See* Def.'s Mot., Ex. 1, at 1-4. In April 2016, the Government filed a superseding information adding a second count of simple assault. *Id.*

---

[1] In support of defendant's Motion to Dismiss, the Court will take judicial notice of the dockets in Cruz-Roldan's criminal cases. *See Covad Comm'cs Co. v. Bell Atlantic Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005).

On July 23, 2015, Nagurka allegedly told the owner of Kiddie Academy, Milena Mattingly, that Cruz-Roldan was guilty of child abuse. Am. Compl. ¶ 33. Mattingly gave a press conference that same day in which she stated, "once we found she was guilty by the investigators, we had to terminate her." *Id.* at ¶¶ 4. According to plaintiff, Nagurka's communication to Mattingly was the proximate cause of her firing. *Id.* at ¶ 36. The communication also allegedly caused her name to be added to a registry that made it difficult for her to get child care work and caused her great humiliation and emotional distress. *Id.* at ¶¶ 4, 36.

The trials in Cruz-Roldan's criminal cases were originally set for November 2015. *Id.* at ¶ 4. When the Government disclosed a large amount of evidence a week and a half before trial, the court continued the trials, eventually setting them for May 2016. *Id.* About a month before trial, the Government turned over to Cruz-Roldan's defense attorney the video footage of Nagurka's interview with Lopez and also the email exchange with the specialist who concluded "I don't think this clip shows enough to explain [J.S.'s] injuries." *Id.* A few weeks later, about a week before trial, the Government turned over a report indicating that Nagurka had visited Kiddie Academy the day before he had called Lopez and Cruz-Roldan down to the station. *Id.* On this visit, Lopez and another employee both apparently indicated that nothing inappropriate had happened on the day J.S.'s injuries were discovered. *Id.*

Based on this and other alleged failures to turn over exculpatory evidence, Cruz-Roldan's defense counsel filed a motion to dismiss the charges against her on May 4, 2016.

*Id.* The Government dismissed both cases on May 6, 2016, entering a *nolle prosequi* for all charges. *Id.*

Cruz-Roldan initially filed this lawsuit in D.C. Superior Court on June 2, 2016. Defendant removed to federal court. Notice of Removal [Dkt. #1]; *id.* at Ex. A [Dkt. #1–1]. Plaintiff amended her complaint on June 29, 2016. Am. Compl. [Dkt. #5]. Defendant responded by filing a partial answer and this Motion for Partial Dismissal of the Amended Complaint challenging the claims based on plaintiff's criminal prosecution, the slander claim, and the false arrest claims [Dkt. #9]. Plaintiff opposed and also requested to further amend her complaint by adding one paragraph that would allege Nagurka's communication to Mattingly was not privileged and, therefore, met the elements of slander. Pl.'s Mot. for Leave to Am. the Compl. [Dkt. #12].

## ANALYSIS

When deciding a motion to dismiss under Rule 12(b)(6), the Court must ascertain whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). Although the Court must read the complaint's factual allegations in the light most favorable to the plaintiff, *Bell Atlantic Co v. Twombly*, 550 U.S. 544, 555 (2007), the Court is not required to accept legal conclusions cast in the form of factual assertions, *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). For the following reasons, I agree with defendant that plaintiff's criminal prosecutions are an insufficient injury on which to base her tort and constitutional claims. I disagree with defendant as to his arguments for dismissing the slander and false arrest claims.

I. **Plaintiff May Not Bring Claims Based on Her Criminal Prosecutions (Count IV and Part of Count VI)**

Plaintiff has three theories that she was injured in the course of the criminal prosecutions against her. She has a tort claim for malicious prosecution (Count IV); a constitutional claim that having to face an unnecessary criminal prosecution constituted a clear Fifth Amendment violation (part of Count VI), *see* Pl.'s Opp'n 7 [Dkt. #13]; and a constitutional claim that the Government's failure to turn over exculpatory material during trial prep constituted a clear *Brady* violation (part of Count VI), *see id.* at 8-9. None of these claims survive defendant's argument that Cruz-Roldan did not suffer an injury on account of these allegations because the Government voluntarily dropped the criminal prosecutions against her.

It is well-settled in D.C. that the tort of malicious prosecution requires that the underlying suit be terminated in plaintiff's favor. *See, e.g., Pitt v. Dist. of Columbia*, 491 F.3d 494, 501 (D.C. Cir. 2007). Plaintiff also concedes that this requirement applies to the Fifth Amendment claim that she unnecessarily faced a criminal prosecution. *See* Pl.'s Opp'n 7. Because this element is part of plaintiff's *prima facie* case, it is her burden to demonstrate that the termination was favorable. *Accord Kenly v. Dist. of Columbia*, 83 F. Supp. 3d 20, 43 (D.D.C. 2015); *Harris v. Dist. of Columbia*, 696 F. Supp. 2d 123, 134 (D.D.C. 2010). Unfortunately for the plaintiff, she faces an uphill battle when the case was terminated, as it was here, by a *nolle prosequi* dismissal. *Id.* Although D.C. has not squarely addressed how to evaluate a *nolle prosequi* dismissal, defendant submits that such dismissals are *not* favorable terminations because they are "without prejudice" unless

6

otherwise stated, which means the prosecutor may bring the case again. As such, plaintiff urges the Court to follow jurisprudence from other jurisdictions, which look in these situations to the underlying reasons a prosecutor decided to dismiss the case. *See, e.g., Murphy v. Lynn*, 118 F.3d 938, 948 (2d Cir. 1997). Here, plaintiff at least alleges that the reason the prosecutor dismissed the case was because of continuing *Brady* violations and the pending motion to dismiss on that basis.

Even if I adopt plaintiff's view of the law and inquire into the reasons the case was dismissed with a *nolle prosequi* disposition, I still must hold that plaintiff has not alleged facts that could plausibly meet her burden to show that the reason was "a lack of reasonable grounds for the prosecution." *Murphy*, 118 F.3d at 948 (2d Cir. 1997) (quoted at Pl.'s Opp'n 13); *see also Brown v. Carr*, 503 A.2d 1241, 1245 (D.C. 1986) (if the dismissal is "on technical grounds" or is "for procedural reasons," it does not constitute favorable termination). The mere filing of *Brady* motions, and a corresponding motion to dismiss, does not plausibly suggest that the Government dismissed because it viewed the plaintiff as innocent or the case as unsupportable. Even reading into the fact that the Government dismissed the case quickly after disclosing new material, it is at least equally likely that the Government believed the court might dismiss the cases on the technical ground that they should have turned the material over *earlier*. That possibility is just one among many that plaintiff has failed to foreclose in her Complaint. Without some better indication of the prosecutor's reason for dismissing, the plaintiff has not plausibly alleged favorable termination. *Accord Kenley*, 83 F. Supp. 3d at 42.

Plaintiff's claim based on alleged *Brady* violations fares no better. Although *Brady*

is well-settled constitutional law of the type that can defeat the qualified immunity that Nagurka enjoys when facing § 1983 claims, plaintiff has not suffered any constitutional *injury* from a *Brady* violation (assuming one occurred) because the point of *Brady* is to protect a defendant's rights at trial. *See Strickler v. Greene*, 527 U.S. 263, 281 (1999) ("[S]trictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."). Plaintiff in effect asks me to extend the holding in *Brady* to find a constitutional injury in her case, arguing that a failure to disclose exculpatory evidence could cause a defendant to unwittingly plead guilty. But Cruz-Roldan did not plead guilty in her criminal cases. And, in any event, such an extension of the law would be a new holding that Nagurka could not be expected to anticipate. As such, plaintiff cannot sustain a claim for damages based on the Government's failure to turn over *Brady* material.

## II. Plaintiff May Proceed with Her Slander Claim (Count VII)

In Count VII, plaintiff alleges that Nagurka slandered her when he told Mattingly she was guilty of child abuse. Defendant asserts he is protected by the "common interest" privilege and that the facts on the face of the Complaint establish that he is entitled to that privilege. A defendant is immune from a claim of slander under the common interest privilege when he speaks pursuant to "a duty to a person having a corresponding . . . duty," *Blodgett v. Univ. Club*, 930 A.2d 210, 234 (D.C. 2007), and the statement is made in order to advance that "proper purpose." *Payne v. Clark*, 25 A.3d 918, 926 (D.C. 2011) (quoting *Morsie v. Trussell*, 467 A.2d 475, 477 (D.C. 1983)). Defendant points out that he was

under such a duty to prevent further child abuse, which duty has even been codified at D.C. Code § 4-1321.01. He asserts that the only plausible reason to tell Mattingly that Cruz-Roldan was guilty was to fulfill that duty and help her prevent further child abuse as well. But defendant is wrong that the Court can conclusively decide at this stage whether he made the statement to Mattingly in order to advance that "proper purpose." The thrust of plaintiff's Complaint is that Nagurka essentially fabricated the case against Cruz-Roldan. She supports this inference by alleging that Lopez's accusation against Cruz-Roldan was coerced and that no reasonable officer could have thought a video showing Cruz-Roldan touching one cheek could support the charge that she was responsible for a mark on the other cheek. If Nagurka did fabricate the case against Cruz-Roldan, a question of fact for the jury, *see Payne*, 25 A.3d at 926, then he was not acting in good faith to warn Mattingly about the potential for child abuse and does not qualify for the privilege. *See also Blodgett*, 930 A.2d at 220 ("good faith" a required element of the common interest privilege).

Plaintiff will not, however, be permitted to amend her Complaint to include a paragraph claiming that Defendant Nagurka's statement was not privileged. Besides it being unnecessary to respond to the instant Motion to Dismiss, it is a purely legal allegation that has no effect on the sufficiency of the Complaint. Plaintiff's Motion to Amend [Dkt. #12] is, therefore, **DENIED**.

### III. Plaintiff May Proceed with Her False Arrest Claims (Count IV and Part of Count VI)

Defendant argues that plaintiff does not state a claim for false arrest because the Complaint alleges facts showing that Nagurka reasonably believed that Cruz-Roldan

committed the child abuse that he arrested her for. But, once again, Cruz-Roldan alleges that Nagurka knew Lopez's accusation was coerced (or at least was unreliable). She also alleges that all the other evidence in the J.S. case pointed *away* from Cruz-Roldan. One reasonable inference from these allegations would be that Nagurka fabricated the case against Cruz-Roldan. Whether this is true is a question of fact that plaintiff must have a chance to prove. Her false arrest claims therefore survive defendant's motion to dismiss.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Partial Dismissal of the Amended Complaint [Dkt. #9] is **GRANTED IN PART** and **DENIED IN PART**. Claim V and the parts of Claim VI based on plaintiff's criminal prosecution are **DISMISSED**. All other claims will go forward. An appropriate order shall accompany this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge